Paul T. McNAMARA, Administrator of
the Estate of John Grigel, Deceased,
Plaintiff-Appellee,

v.

Ernest P. DIONNE, Defendant-Appellant.

No. 95, Docket 27088.

United States Court of Appeals
Second Circuit.

Argued Nov. 13, 1961.

Decided Jan. 15, 1962.

Fitts & Olson, Brattleboro, Vt., for defendant-appellant.

Black & Plante, White River Junction, Vt., for plaintiff-appellee.

Before SWAN, MOORE and SMITH, Circuit Judges.

SWAN, Circuit Judge.

This is an action by the administrator of the estate of a deceased child to recover damages for "the pecuniary injuries resulting from such death" to his parents. The action was brought pursuant to the Vermont Wrongful Death Act, Title 14 § 1492, Vermont Statutes Annotated. It was tried to a jury, whose verdict awarded plaintiff $15,000. Federal jurisdiction rests on diversity, plaintiff being a citizen of New Hampshire and defendant a citizen of Vermont.

The accident happened about 2:30 P.M. on May 25, 1960, in the Town of Hartford, Vermont. No eyewitness testified. The following story is elicited from witnesses called by the plaintiff. John Grigel, who was killed by defendant's car, was slightly less than eight years old. He and two or three other children were walking home after school. They were walking north on the sidewalk at the easterly side of U. S. Route 5, a paved highway about sixteen feet wide. The sidewalk is two or three feet east of the pavement. Route 5 runs in a northerly direction out of White River Junction. Defendant was driving north in the right hand lane of Route 5. He saw the group of school children ahead of him on the sidewalk and sounded no horn or other warning signal. He also saw a police car further north coming toward him. He says he was watching the police car and did not know of the accident until he saw a little boy either lying on the hood of his car or falling off it. The driver of the police car testified that he observed the group of children on the sidewalk and met them before he passed Dionne's car; that when he was beside Dionne's car or by it, he heard the brakes squeal, looked in the rear view mirror and saw the Dionne car pull to the left

side of the highway and a child bouncing down the side of the road. Another police officer, who arrived after the accident to investigate it, testified as to marks in the road and thought the boy's body was about forty-nine feet from where the original impact occurred. There was no evidence that defendant was speeding. The witnesses estimated that he was going between twenty and thirty miles an hour. The posted speed limit at the place of the accident was forty miles.

The complaint alleged that the negligence of the defendant caused the boy's death. The court properly charged the jury that plaintiff had the burden of proving the defendant to have been negligent and such negligence to have been the proximate cause of the accident; and that the defendant had the burden of proving contributory negligence on the part of the boy, a defense pleaded in defendant's answer.

■ We think it clear that the evidence as to negligence and its causal relation to the boy's death made a case for submission to the jury. Indeed, appellant's brief presents no argument to the contrary. The errors alleged by the appellant relate to instructions given or refused, to alleged prejudicial conduct of the court, to failure to dismiss on jurisdictional grounds, and to denial of a motion for a new trial.

■ At the opening of the February 1961 term of court, Judge Gibson delivered a "general charge" to the panel of jurors convened to hear cases during the term. He told them that in fixing the amount of damages, if they found the defendant liable, they should award the plaintiff "such damages as you yourself would want to be awarded if you were the plaintiff and were entitled to have damages awarded." When a jury was drawn in March to try the present case, counsel for defendant objected that the quoted charge to the panel was not the law of Vermont and should be corrected, but the court ruled that the objection came too late. As a plaintiff is entitled only to just compensation for

the wrong done, what counsel calls "The Golden Rule" charge is not the law of Vermont. That the charge to the panel was erroneous has been very recently explicitly decided by this court. See Callaghan v. A. Lague Express, 2 Cir., 298 F.2d 349, discussing Vermont decisions. But reversal of the judgment on this ground is not necessary. The error could have been corrected when the trial jury was charged. No request to correct it was made at that time, and the error was not then repeated. The utility of a general charge to the panel may well be doubted. Cf. United States v. Allied Stevedoring Corp. et al., 2 Cir., 258 F.2d 104, 107, cert. den. 358 U.S. 841, 79 S.Ct. 58, 3 L.Ed.2d 76.

■ A more troublesome question is the court's failure to grant defendant's request No. 11 dealing with burden of proof as to damages.[1] Mr. Fitts' statement: "The Court hasn't removed speculation from the case at all," may have caused the trial judge to think the matter sufficiently covered by the instruction previously given: "Mere conjecture is not proof on the part of one who must make proof." However, at that point in the charge the court was referring only to burden of proof on the issues of negligence and contributory negligence. Appellee contends that defendant's exception to the failure to charge request No. 11 was an insufficient exception because it was coupled with a motion to limit damages to hospital expenses, etc. and thus diverted the court's attention from the specific request. This is not persuasive in view of the Vermont rule that the jury must be instructed on every material element of the case, even though not requested to do so.[2] However, examination of the charge leaves us in no doubt that the jury must have understood that the plaintiff had to prove the damages recoverable by him.

■ Appellant argues that the judgment should be reversed because the court used the word "unfortunately" in giving the instruction quoted in the margin.[3] Appellant and appellee disagree as to whether the word "unfortunately" refers to an argument made by plaintiff's counsel to the jury, to which defendant's counsel had objected, or is an expression of the court's regret that the law is as he stated it to be. Under either interpretation, the instruction was correct, and there is no reason to suppose that the jury did not follow it.

■ Other alleged errors with respect to the charge are so lacking in merit as to deserve no discussion. This is likewise true of the contention that the court should have dismissed the case on its own motion because, on the evidence presented, the controversy involved less than $10,000, even though the complaint asked for $45,000.

The final contention relates to denial of defendant's motion for a new trial. Evidence was given at the trial of the life expectancies of John, his father and his mother, and the court charged that the Administrator is entitled to recover

1. The record as to this reads as follows:
   " '11. In considering an award on account of future damages by way of pecuniary loss to the next-of-kin, you may not award such damages unless you are satisfied from all the evidence in the case that there is a reasonable certainty or a reasonable probability that the expected future consequences will ensue. Mere speculation as to possible future consequences will not support an award based upon such consequences.'
   "Mr. Fitts: The Court hasn't removed speculation from the case at all. We except to the failure of the Court to Charge that the burden of proof is on the plaintiff on damages and move that the matter of all damages except the four exhibits, be now removed from the case because there is no evidence at all to support any finding of future damages at all."

2. Wortheim v. Brace, 116 Vt. 9, 11, 68 A.2d 719; Blondin v. Carr, 121 Vt. 157, 151 A.2d 121 (1959).

3. "In deciding the damages of the parents, you are confined to the pecuniary losses that they have sustained because of John's death. Unfortunately, as counsel have argued, the law does not allow any recovery for the grief and anguish which Mr. and Mrs. Grigel have felt because of the death of their son."

a lump sum equivalent of the loss of services the parents would have received from their son had he not been involved in this fatal collision, and the loss of services may include damages for the loss of reasonably expected pecuniary benefits accruing after minority. No request was made to charge that any award representing damages to accrue in the future should be reduced to its present worth.[4] But the point that such a charge should have been given was raised in the motion for a new trial. This presents an interesting question on which no precise authority has been found.

■■ When a case is tried in a State court, Vermont decisions require the trial judge to charge on "all material elements" of the case, even though not requested to do so.[5] Consequently, had the present action been brought in a State court it would seem that the judgment would have been reversed on appeal. It might be argued that Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, and their progeny require the same result on appeal from a judgment of a federal court sitting in Vermont, where federal jurisdiction rests solely on diversity of citizenship. However, a careful examination of the authorities convinces us that the argument is not sound. In Sibbach v. Wilson & Co., 312 U.S. 1, 655, 61 S.Ct. 422, 85 L.Ed. 479, it was held that Rule 35 of the Federal Rules of Civil Procedure, 28 U.S.C.A. should prevail over a contrary state rule. That federal courts are not bound by procedural rules of the States was also held in Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525,

537–538, 78 S.Ct. 893, 2 L.Ed.2d 953, even though the outcome of the litigation might be different. However, difficult differentiation between what is substantive law and what is procedural may sometimes be, it seems clear that whether an appellant may claim error for failure to give an instruction not requested and as to which no objection was taken for failure to give it involves a matter of procedure. As to this Rules 46 and 51 of the Federal Rules of Civil Procedure are relevant. Rule 46 declares that formal exceptions are unnecessary but the party affected must make known to the court "his objection to the action of the court and his grounds therefor." And Rule 51 states that "no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." An appellate court may, in its discretion, disregard Rule 51 when the error claimed is plain and may result in a miscarriage of justice, but as stated in Troupe v. Chicago, D. & G. Bay Transit Co., 2 Cir., 234 F.2d 253, 259, "we think this discretion should be exercised sparingly and only in exceptional cases."[6] We see no adequate reason to disregard the Rule in the case at bar. The trial judge instructed the jury that the plaintiff is entitled to recover a lump sum equivalent of the loss of services the parents would have received from their son and the loss of services may include damages for the loss of reasonably expected pecuniary benefits accruing after minority. There is no reason to assume that the jury did not realize that a lump sum equivalent of future benefits would be less than the benefits themselves. True,

---

4. Such apparently is the rule in Vermont. Morrisey v. Hughes, 65 Vt. 553, 559, 27 A. 205, 207; Fulsome v. Town of Concord, 46 Vt. 135, 141–142.

5. See note 2, supra.

6. In United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 392, 80 L.Ed. 555, the opinion of Mr. Justice Stone, page 160, recognized that "In exceptional circumstances, especially in criminal cases, ap-

pellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceeding." See also Johnson v. United States, 318 U.S. 189, 200, 63 S.Ct. 549, 87 L.Ed. 704; McNello v. John B. Kelly, Inc., 3 Cir., 283 F.2d 96, 102; 5 Moore, Federal Practice § 51.04.

a somewhat different verdict might have been rendered if the jury had been instructed on the way to discount future benefits; but any variance between the verdict and what it might have been is not in our opinion such a fundamental error as to excuse the defendant and his attorney from the requirements of Rule 51. The attorney may be presumed to be familiar with the Federal Rules of Procedure, and we may properly impose upon him the obligation to bring to our attention in the manner prescribed by the Rules, errors which are to be considered on appeal.

Judgment affirmed.